IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FIRAS AYOUBI, R66956, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 26-cv-269-DWD |
| | ) | |
| LATOYA HUGHES, | ) | |
| JEFFREY WEHKING, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Firas Ayoubi, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center (Centralia), brings this civil rights action for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, the complaint alleges that Plaintiff needs accommodations related to a movement disorder. At the time of filing the Complaint, Plaintiff also applied to proceed *in forma pauperis* (IFP). (Doc. 2). According to 28 U.S.C. § 1915, a prisoner may not bring a civil action or appeal a civil judgment without payment of a fee (or as a pauper) "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Plaintiff clearly acknowledged in his Complaint that he has three strikes, and he seeks to proceed based on his perception that he faces imminent danger. The Seventh

Circuit has explained that "imminent danger" requires a "real and proximate" threat. *See Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). Allegations of past harm are not sufficient to state imminent danger; "the harm must be imminent or occurring at the time the complaint is filed." *Id.* The imminent danger exception to § 1915(g)'s "three strikes" rule is available for genuine emergencies, where time is pressing, the threat is "real and proximate, and when the potential consequence is 'serious physical injury'...." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). Additionally, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Ciarpaglini*, 352 F.3d at 331 (*citing Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). The Court looks to the allegations set forth in the original Complaint when determining whether Plaintiff faced imminent danger of serious physical injury. *See Ciarpaglini*, 352 F.3d at 330.

In the Complaint, Plaintiff alleges that he has an involuntary movement disorder, which causes frequent conflict with other inmates because he involuntarily strikes them. He alleges that in July of 2025, outside neurologists recommended that he be single-celled until the source of his disorder could be better evaluated, and staff at Dixon Correctional Center adopted that suggestion. He was single-celled at Dixon from early July of 2025 through his transfer to Centralia on March 3, 2026. He claims that upon arrival at Centralia, he has been denied single-cell status and he has already experienced conflicts with cellmates. He struck his first cellmate several times on accident, and after complaining he alleges he was moved to a drug infested dangerous area of the prison. He alleges that he has struck his new cellmate, has been assaulted by him, and fears future

conflicts.  He also complains that in-cell drug use by his current cellmate exacerbates his condition.  Plaintiff faults Latoya Hughes (IDOC Director) and Jeffrey Wehking (Centralia Warden) for knowing of his condition via his institutional files or directly from him.  He faults them for failing to provide adequate conditions of confinement and for violating his rights under the ADA/RA.  He seeks injunctive relief and $1.00 in damages. (Doc. 1 at 13).

Upon initial review of the Complaint, the Court immediately noticed that it was questionable if Plaintiff had attempted to grieve his issues given the short passage of time from Plaintiff's arrival at Centralia on March 3, 2026, and his filing of the lawsuit on March 10, 2026.  Therefore, the Court directed Plaintiff to show cause about his exhaustion efforts.

In response, Plaintiff argues that he has already grieved this issue multiple times at past prisons, to no avail.  He argues that further use of the grievance process is not necessary because this is a continuing violation, and also that the grievance process has proved to be a dead-end for this issue.  At the same time, he states he eventually received a successful outcome because he was granted a statewide ADA permit for his needs that is not being honored now at Centralia.  He also adds that he filed an emergency grievance at Centralia, but it was denied emergency status.  (Doc. 2 at 2).

Plaintiff's arguments are unavailing.  His insistence that he has filed other similar grievances at multiple facilities does not negate his obligation to file a grievance in light of his new circumstances.  Past grievances were based on his desire for medical accommodation, but this new grievance would concern merely adhering to relief he

claims he has already been afforded. In *Tackett v. Jess*, 853 Fed. App'x 11 (7th Cir. 2021) the Seventh Circuit found that an inmate's past grievances about delayed surgery and post-surgical medication did not extend to cover his more generic complaints about continued pain after he had been transferred to a new prison. Plaintiff's situation is like *Tackett*, he may have filed grievances in the past at other prisons about his desire for single-celling, but once he was seen, given the permit, and ultimately transferred to Centralia his situation materially changed. He cannot plausibly argue that old grievances that pre-date the issuance of the single-cell permit are sufficient to exhaust his new situation at a new prison.

Additionally, he admits he filed a grievance at Centralia but simply has not waited for a response. Racing to the federal courthouse to file a lawsuit is not the right approach. In fact, in *Fletcher v. Menard*, 623 F.3d 1171, 1174-75 (7th Cir. 2010) the Seventh Circuit found that it was appropriate to dismiss a lawsuit by an inmate with three strikes because IDOC had an emergency grievance process, but he did not even allow adequate time to pursue it before suing. Plaintiff filed his lawsuit within a week of his transfer to Centralia and he now admits in his response that he filed a grievance but has not gotten a response. Though Plaintiff says that his grievance was deemed a non-emergency, he does not say when that happened. Additionally, this suggests that the grievance process is functional even if it may produce a result he does not like, so that is further proof he has access to an exhaustion process that he did not use at all levels prior to suing. As in *Fletcher*, the Court finds that this case should be dismissed as prematurely filed.

The Court is also not persuaded that Plaintiff has plausibly established an imminent danger. He complains of an involuntary movement disorder that has created tension with cellmates. In an affidavit supporting his Motion (Doc. 2-1 at 29-31), Plaintiff says he struck one cellmate and was moved, and he has had problems with the new cellmate smoking and threatening him. The mere risk of disagreements with a cellmate is not enough to establish imminent danger.[1] Plaintiff alleges he struck his first cellmate twice, but he does not say anything bad came of it. (Doc. 2-1 at 30). He says that he is in a new cell with an inmate who has threatened or assaulted him, but Plaintiff does not say that any of this was brought about by his movement disorder. Even if it was, other district courts and the Seventh Circuit have found when considering Plaintiff's movement disorder that the fear of skirmishes with other inmates does not support a finding of imminent danger. *See Ayoubi v. Hughes,* Case Nos. 23-2689 & 23-2838 (7th Cir. April 2, 2024 Order) (finding that Plaintiff's past run-ins with inmates over his disorder and fear of future fights did not satisfy the imminent danger requirement).

Plaintiff argues that his present situation is different because he is also now facing secondhand smoke, which exacerbates his condition. A prison is not required to provide a smoke free environment. *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Powers v. Snyder,* 484 F.3d 929, 932 (7th Cir. 2007). The Supreme Court held in 1993 that a prison inmate "states a cause of action under the Eighth Amendment by alleging that

---

[1] *See e.g., Tatum v. Hoy*, 2025 WL 1885806 at *2-3 (E.D. Wisc. July 8, 2025) (finding that an inmate who had a brief scuffle with a cellmate and speculated that another scuffle might occur had not established imminent danger); *see also Fletcher v. Menard*, 623 F.3d 1171, 1173 (7th Cir. 2010) (suggesting that while a past beating could not establish imminent danger, an injury from the beating might meet the standard).

[defendants] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35. Objectively, an inmate must show he is exposed to levels of environmental tobacco smoke (ETS) that are unreasonably high, and that pose such a grave risk it violates contemporary standards of decency. *Id.* Subjectively, an inmate must demonstrate that a defendant exhibited deliberate indifference to a serious risk of harm to his future health. Ultimately, an inmate must provide competent and reliable expert medical testimony that he personally faces a risk of a future serious medical condition based on smoke exposure. *Henderson v. Sheahan*, 196 F.3d 839, 842 (7th Cir. 1999). An inmate can also bring a second-hand smoke claim if he alleges that he has a present chronic condition, like asthma, that is severely exacerbated by smoke exposure. *Id.* at 845.

Plaintiff appears to rely solely on the theory that the smoke exposure exacerbates his movement disorder, but he does not say that this assertion has been medically substantiated in any way. Even if it had, the existence of smoke and his movement disorder still only create the possibility of future skirmishes with cellmates, but the mere possibility of a future risk is not enough to satisfy the imminent danger standard. As other courts have concluded, Plaintiff's allegations are insufficient to demonstrate imminent danger.

Based on the foregoing analysis, the Court will not further analyze the Motion for a Preliminary Injunction or the merits of the underlying proposed claims.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's complaint is dismissed as prematurely filed because he filed it just seven days after arriving at Centralia and he admits he did not wait for a response to his grievance. Plaintiff's complaint also does not satisfy the imminent danger requirement to the three-strikes provision of § 1915(g). Plaintiff's in forma pauperis motion (Doc. 3) is **DENIED** and his Motion for a Preliminary Injunction (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 13, 2026                                    /s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge